IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**EUGENE NICHOLS**                                                                                             **PLAINTIFF**

**V.**                                                        **CAUSE NO. 3:10-CV-00420-CWR-LRA**

**MICHAEL J. ASTRUE, COMMISSIONER**
**OF SOCIAL SECURITY**                                                     **DEFENDANT**

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS**

The above-styled motion is before the Court on the Report and Recommendation[1] of United States Magistrate Judge Linda R. Anderson, which suggests affirming the decision of an administrative law judge who denied benefits to the plaintiff.

Eugene Nichols is 57 years old. In 2000, Nichols injured his back in a work-related accident.[2] After a conservative course of treatment, Nichols submitted in July 2002 to an MRI of his lumbar spine, which "showed mild facet degeneration at L4-S1, but was otherwise normal."[3]

In November 2004, Nichols visited Dr. Ruby Moy, whom Nichols advised "that he had been hypertensive for six months"[4] and that he "had been diagnosed with diabetes at a health fair."[5] He also reported, among other conditions, "low back pain radiating to his left hip."[6] Dr.

---

[1] Report and Recommendation of United States Magistrate Judge (hereinafter "Report and Recommendation") [Docket No. 17].

[2] Report and Recommendation at 2.

[3] Report and Recommendation at 2.

[4] Report and Recommendation at 2.

[5] Report and Recommendation at 2.

[6] Report and Recommendation at 2.

Moy concluded that Nichols suffered from "low back pain, probable diabetes, uncontrolled hypertension, and shortness of breath likely due to heart disease."[7]

After the November 2004 consultation, Nichols did not visit another physician until May 2006, when Dr. Gordon Nutik evaluated Nichols at the request of Nichols' attorney.[8] Nichols told Dr. Nutik that "his back pain [w]as sharp and constant and 'hot all the time.'"[9] Dr. Nutik ordered x-rays of Nichols' back, but they revealed no fractures, although several discs showed narrowing.[10] Dr. Nutik concluded that Nichols had "severe multi-level degenerative disease about the cervical spine which was likely responsible for the limited neck motion and recent onset tingling in the right hand and chronic loss of left biceps tendon reflex."[11] Dr. Nutik also concluded that Nichols

> should not lift or carry more than 20 pounds occasionally and 10 pounds frequently; he should not stand or walk more than 2 hours but could sit 6 hours, and could push or pull without limitations. He would have a limited ability to reach, and should avoid working at heights due to limited neck movement. [Nichols] should also never climb, crouch, or crawl, and could occasionally balance, stoop, and kneel.[12]

Over the course of the next year, Nichols was seen by at least three different doctors, one of whom noted that Nichols "had a full range of motion in his neck[ ] and in his upper and lower

---

[7] Report and Recommendation at 3.

[8] Report and Recommendation at 3.

[9] Report and Recommendation at 3.

[10] Report and Recommendation at 4.

[11] Report and Recommendation at 4-5.

[12] Report and Recommendation at 5.

extremities."[13] His most recent treatment for back pain occurred in March 2007, when emergency room staff at the Madison County Medical Center indicated "no obvious defects."[14]

At his administrative hearing, Nichols testified that his back felt like it was on fire and that his pain had gotten progressively worse since 2004,[15] but that he had not sought out treatment in "a good while."[16] And despite reporting that he could not stand or sit for more than two hours without his back beginning to hurt,[17] the administrative law judge noted that Nichols "did not have to change positions frequently and was able to remain seated throughout the hearing."[18]

Ultimately, the administrative law judge concluded that Nichols was not disabled. Nichols appealed to the district court, and on February 17, 2012, the magistrate judge issued a 19-page Report and Recommendation in which she suggested affirming the administrative law judge. Nichols objected[19] to the recommendation, and the United States Attorney's office declined to respond.[20]

---

[13] Report and Recommendation at 6.

[14] Report and Recommendation at 6.

[15] Report and Recommendation at 6-7.

[16] Report and Recommendation at 7.

[17] Report and Recommendation at 7.

[18] Report and Recommendation at 11.

[19] Plaintiff's Objections to the Magistrate's [*sic*] Report and Recommendations [Docket No. 18].

[20] Defendant's Response to Plaintiff's Objections to the Report and Recommendation of the United States Magistrate Judge [Docket No. 19].

## STANDARD OF REVIEW

When a magistrate judge issues recommendations regarding a dispositive matter, objections thereto are reviewed *de novo*.[21] However, on appeal from a decision of an administrative law judge, a reviewing court limits itself to two questions: "(1) whether there is substantial evidence in the record to support the decision[ ] and (2) whether the decision comports with relevant legal standards."[22] "Conflicts in the evidence are to be resolved by the Commissioner, not the courts."[23] Therefore, although the magistrate judge's conclusions should be reviewed with no deference, the district court is obligated to afford the administrative law judge's decision with the same deference as did the magistrate judge.

## ANALYSIS

Nichols presents three assignments of error to the magistrate judge's recommendation to affirm the administrative law judge's decision. They are:

> First, the Magistrate [*sic*] erred by finding that the ALJ applied the correct legal standard in assessing plaintiff's credibility. Second, the Magistrate [*sic*] was in error to find that the ALJ's residual functional ("RFC") assessment was supported by substantial evidence. Finally, the Magistrate [*sic*] erred by finding that the hypothetical question relied upon by the ALJ to find plaintiff "not disabled" was supported by substantial evidence.[24]

**Nichols' Credibility.** Nichols' first argument is that "the Magistrate [*sic*] erred because she did not ensure that the ALJ employed the proper legal standard when evaluating [Nichols']

---

[21] Fed. R. Civ. P. 72(b)(3).

[22] *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).

[23] *Oddo v. Astrue*, 2010 WL 3937627, *1 (S.D. Miss. Oct. 4, 2010) (citations omitted).

[24] Memorandum in Opposition to Magistrate's [*sic*] Recommendation for Dismissal [Docket No. 18-1] (hereinafter "Nichols' Brief") at 5.

credibility."[25]

Specifically, Nichols relies on Social Security Ruling 96-7p, which provides that "[w]hen evaluating the credibility of an individual's record and statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statement." In other words, when an administrative law judge evaluates the issue of credibility, he must explain himself. The reasons supporting credibility judgments "must be sufficiently specific to make clear to . . . any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."[26]

Nichols concedes that "the ALJ did provide some reasons why he did not give credibility to Mr. Nichols' statements concerning the intensity, persistence, and limiting effects of his impairments,"[27] but that the administrative law judge nevertheless "failed to employ the correct legal standard when finding that [Nichols'] statements were not considered credible."[28]

Nichols' argument is not particularly clear. It presents itself as an attack on the administrative law judge's thoroughness, but Nichols spends the bulk of his ink attempting to rebut the administrative law judge's conclusions with substantive evidence rather than illustrating that the administrative law judge gave no reasons for his own conclusions. For example, after recounting evidence favorable to his claim, Nichols concludes that "there is substantial objective medical evidence in the record that establishes by medically acceptable

---

[25] Nichols' Brief at 6.

[26] SSR 96-7p.

[27] Nichols' Brief at 7.

[28] Nichols' Brief at 7.

clinical diagnostic techniques . . . that plaintiff has physical impairments that could reasonably be expected to produce the symptoms reported . . . ."[29]

But this is exactly the opposite of the question truly at issue. Under the deferential standard in play at this stage, the issue at hand is not whether the evidence supporting the administrative law judge's conclusion is more compelling than that opposing his conclusion. A reviewing court "may not reweigh the evidence in the record."[30]

Even if this first assignment of error were not simply a veiled attack against the weight of the evidence supporting the administrative law judge's ruling – and it appears to be just that – the argument still would be without merit. The administrative law judge did explain his decision to view Nichols' credibility as diminished. For example, as Judge Anderson noted in her Report and Recommendation, Nichols did not show signs of discomfort at the hearing, and despite claiming that he had been in constant pain for several years, he admitted that his efforts to seek treatment had been few and far between.[31]

The administrative law judge fulfilled his duty to explain the reasons for his decision to view Nichols' credibility skeptically. Therefore, this Court concludes that the magistrate judge's recommendation not to reverse on these grounds was not in error.

**Residual Functional Assessment.** Nichols' second argument is that the administrative law judge erred by concluding that the residual functional capacity analysis was supported by

---

[29] Nichols' Brief at 8.

[30] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

[31] Report and Recommendation at 11-13.

substantial evidence.[32] This is purely an attack against the evidentiary weight of the administrative law judge's decision, and so long as substantial evidence supports it, a reviewing court cannot reverse.[33]

Specifically, Nichols argues that the administrative law judge had no substantial evidentiary basis on which to conclude that Nichols could perform light work.[34] This is simply not correct; at least one physician to have evaluated Nichols concluded that Nichols had a full range of motion in his neck, upper extremities, and lower extremities.[35]

Therefore, the Court concludes that the magistrate judge did not err in declining to reverse the administrative law judge on this basis.

**Hypothetical Question.** Nichols' final argument is that the magistrate judge erred when she "found that the hypothetical question relied upon by the ALJ to find [Nichols] 'not-disabled' was supported by substantial evidence."[36]

According to Nichols, the administrative law judge asked a number of hypothetical questions of the vocational expert at Nichols' hearing.[37] In his second question, the administrative law judge asked what jobs would be available for an individual who could

---

[32] Nichols' Brief at 10.

[33] *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

[34] Nichols' Brief at 10. *See also* Nichols' Brief at 13 ("It is respectfully submitted that the ALJ's finding that the plaintiff, a fifty-seven year old man with numerous severe limitations, was capable of a full range of light work is not supported by substantial evidence.").

[35] *Supra* at n.12.

[36] Nichols' Brief at 13.

[37] Nichols' Brief at 14.

perform light work with only occasional climbing of ramps, stairs, ladders, ropes, and scaffolds and occasional balancing, stooping, kneeling, crouching, and crawling.[38] Based on the vocational expert's answer, the administrative law judge concluded that Nichols would be able to perform the tasks of a counter clerk and a ticket cashier.[39]

Nichols now argues that the question did not "accurately portray[ ] all of the limitations and restrictions resulting from [Nichols'] impairments."[40] But as with the first two assignments of error, this argument fundamentally is an attack against the weight of the evidence relied on by the administrative law judge.[41] At least one physician to have evaluated Nichols concluded that he had no restrictions to his range of motion in his neck, upper extremities, or lower extremities.[42] The Fifth Circuit does not require an administrative law judge posing a hypothetical question to consider *every* restriction for which there is *any* evidentiary basis; rather, an administrative law judge's hypothetical question must only "incorporate reasonably all disabilities of the claimant *recognized by the ALJ*."[43] Substantial evidence therefore supported the hypothetical question at issue.

---

[38] Nichols' Brief at 14.

[39] Nichols' Brief at 15.

[40] Nichols' Brief at 14.

[41] *See* Nichols' Brief at 15 ("Although [Nichols] does not have any problems with using his hands, Dr. Nutick provided physical restrictions including limited reaching in all directions, including overhead, which the ALJ failed to take into account in his RFC analysis. Similarly, a counter clerk requires frequent reaching as well as occasional stooping and crawling.") (citations omitted).

[42] *Supra* at n.12.

[43] *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

The Court concludes that the magistrate judge did not err by recommending that the administrative law judge not be reversed on this basis.

## **CONCLUSION**

None of Nichols' assignments of error has merit. The administrative law judge's decision comports with relevant legal standards and is supported by substantial evidence. The Court therefore adopts the magistrate judge's Report and Recommendation to affirm the administrative law judge. A Final Judgment shall be entered reflecting the same.

SO ORDERED this Seventeenth day of May 2012.


/s/ *Carlton W. Reeves*
Hon. Carlton W. Reeves
United States District Court Judge